OPINION
This is an accelerated calendar appeal. Appellant, Jessica Koeth, appeals from a final judgment of the Geauga County Court of Common Pleas granting summary judgment in favor of appellee, Kraftmaid Cabinetry, Inc., in an employer intentional tort case. For the following reasons, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
Appellee is a manufacturer of custom wood cabinetry for consumer and commercial use with plants located in Middlefield and Orrville, Ohio. As part of its operations in the Middlefield plant, appellee utilizes four separate sanding lines manufactured by Timesavers, Inc. ("Timesavers")[1]. Each of these sanding lines incorporates several conveyor tables to move the pieces of wood through a series of sanding machines. The conveyor tables themselves are connected to each other and the sanding machines at junctures called "transition points" or "pinch points."
Appellant was employed at appellee as a floating laborer in the Middlfield plant. As part of her job duties, appellant was required to fill in at various positions on the sanding line. On the day of the accident, April 11, 1996, appellant was filling in for another employee as an inspector on the final conveyor table in the Timesavers 300 line. Her job consisted of visually inspecting the cabinet doors as they moved down the conveyor tables, and if she determined that a particular door was in need of repair, appellant was required to remove the door from the conveyor table.
Sometime during her shift, appellant heard a noise emanating from the final conveyor table. Upon a closer inspection, appellant observed a piece of metal near the bottom surface of the conveyor belt which she believed was the source of the noise. Without first disabling the machine, appellant inserted the fingers of her right hand beneath the surface of the conveyor belt and into the frame of the conveyor table to scratch at the piece of metal.
In response to another nearby inspector's comment, appellant looked up from the conveyor table. At this time, appellant's fingers got caught on the interior surface of the conveyor belt, which, in turn, pulled her hand into the nearby rollers of the conveyor mechanism. Unable to reach one of the emergency safety strips to turn the machine off, appellant screamed for help. A co-worker immediately pressed one of the safety strips to disable the table. However, appellant had already suffered a crushing injury to her right arm, breaking two bones and severing an artery.
On January 16, 1997, appellant brought this instant action against appellee based upon a theory of intentional tort. Appellant also named as a defendant the manufacturer of the sanding line, Timesavers, based on a theory of products liability.
After the completion of discovery, appellee filed a motion for summary judgment arguing that appellant could not meet her burden of proof under R.C. 2745.01 or under the common law standard as set forth in Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115
for proving an employer intentional tort. Appellant subsequently filed a brief in opposition to appellee's motion for summary judgment in which she argued that R.C. 2745.01 was unconstitutional, and that genuine issues of material fact existed with respect to her common law claim.
Timesavers filed its own motion for summary judgment arguing that the conveyor belt in question had been substantially altered in between the delivery of the machine to appellee and the accident, and that appellant had failed to set forth a prima facie case of negligence. In response, appellant filed a motion in opposition to summary judgment alleging that Timesavers had failed to provide adequate instructions regarding the dangerous characteristics of the machine in question.
After considering the parties' arguments, the trial court partially granted Timesavers' motion for summary judgment on September 23, 1998. On December 18, 1998, the trial court granted appellee's motion for summary judgment in full, finding that "whether under R.C. 2745.01(C) or under Fyffe * * *, and its progeny, [appellee] is entitled to Summary Judgment in its favor. Although the evidence before the Court may establish that [appellee] acted negligently or that [appellee's] conduct may have bordered on recklessness, the evidence does not support a finding that [appellee] committed an intentional tort."
Appellant subsequently moved the trial court to stay the proceedings with respect to her claim against Timesavers until an appeal was completed with regards to the trial court's granting of summary judgment in favor of appellee. The trial court granted appellant's request. Appellant perfected a timely appeal, and now asserts two assignments of error for our consideration:
 "[1.] The trial court erred in granting appellee's motion for summary judgment when genuine issues of material fact clearly existed as to whether Kraftmaid's intentional and deliberate conduct constituted an employer intentional tort under the common law standard established in Fyffe v. Jeno's Inc., (1991)[,] 59 Ohio St.3d 115.
 "[2.] The trial court erred in applying O.R.C. § 2745 since it is both unconstitutional on its face and in application, and thus is inapplicable to the present action."
Under her first assignment of error, appellant maintains that there is a genuine issue of material fact as to whether appellee committed an employer intentional tort. Specifically, appellant argues that appellee was well aware that unguarded transition points posed a threat of serious harm, and despite this knowledge, appellee intentionally failed to place a guard over the transition point where appellant was injured. Appellant also argues that the evidence showed that appellee was substantially certain that if a person were to come into contact with an unguarded transition point, an injury would occur. Finally, appellant posits that appellee, knowing of the dangerous condition, required her to reach onto a moving conveyor belt and flip passing doors for inspection, and if one of the doors needed repairs, to remove it by hand from the conveyor table.
Summary judgment is proper when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come but to one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); Leibreich v. A.J. Refrigeration, Inc.
(1993), 67 Ohio St.3d 266, 268.
Material facts are those facts which might affect the outcome of the suit under the governing law of the case. Turner v. Turner
(1993), 67 Ohio St.3d 337, 340, citing Anderson v. Liberty Lobby,Inc. (1986), 477 U.S. 242, 248. To determine what constitutes a genuine issue, the court must decide whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. Turner at 340.
Moreover, a party seeking summary judgment on the grounds that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. Dresher v. Burt (1996),75 Ohio St.3d 280. The moving party must be able to point specifically to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claim. Id.
If the moving party meets its initial burden under Civ.R. 56(C), then the nonmoving party has a reciprocal burden to respond, by affidavit or as otherwise provided in the rule, in an effort to demonstrate that there is a genuine issue of fact suitable for trial. Id. If the nonmoving party fails to do so, then the trial court may enter summary judgment against the party.Id.
The Supreme Court of Ohio in Fyffe, supra, set forth the following standard for proving an employer intentional tort.
 "1. Within the purview of Section 8(A) of the Restatement of Law 2d, Torts, and Section 8 of Prosser Keeton on Torts (5 Ed. 1984), in order to establish `intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. * * *
 "2. To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk something short of substantial certainty is not intent. * * *" (Citations omitted.) Fyffe at paragraphs one and two of the syllabus.
As a result, to overcome a properly supported motion for summary judgment, an employee alleging that he or she was injured as the result of an intentional tort committed by an employer must set forth specific facts to raise a genuine issue of material fact as to each of the Fyffe requirements.Hannah v. Dayton Power Light Co. (1998), 82 Ohio St.3d 482,485. If the injured employee fails to present sufficient evidence to support any one of the three requirements, summary judgment in favor of the employer is appropriate.
In its judgment entry, the trial court made the following observation:
 "The evidence which this Court finds as being most critical to [Appellant's] claims are as follows:
 "1. [Appellee] Kraftmaid did not deliberately fail or refuse to install the safety guard on the conveyor line;
 "2. The emergency stop bar which [Appellee] Kraftmaid removed would not have prevented the injury to [Appellant] from occurring, although it may well have decreased the severity of [Appellant's] injuries;
 "3. The actions of [Appellant] in attempting to discover the source of the noise she heard were not tasks assigned by the employer nor could they be construed as actions or activities expected or anticipated by the employer."
In appellee's motion for summary judgment, evidentiary materials were presented that suggested that the company's actions did not rise to the level of an employer intentional tort. For example, appellee argued that it was unaware that a guard was available for the transition point where appellant was injured, and that it had been unintentionally omitted because Timsavers had failed to provide instructions showing a guard in place on that particular point on the sanding line. In addition, appellee also argued there was no evidence that the emergency safety strip, which it concedes was intentionally removed, would have prevented appellant's injury, and at most, would have only lessened the injury's severity. Finally, with respect to appellant's job duties on the sanding line, appellee maintains that all of appellant's work was to be performed above the table, and that it was completely unforeseeable that an employee would insert her hand inside of the conveyor table to fix a possible problem.
Appellant countered appellee's arguments by submitting her own evidentiary material in a motion in opposition to summary judgment. In particular, appellant appended portions of several witnesses' deposition testimony. One of the deponents testified that appellee had intentionally left the guard off because it interfered with the inspection of the passing cabinet doors. In addition, other evidence was submitted alleging that appellee had intentionally removed the emergency safety strip because on several occasions, employees had brushed up against the strip causing the whole sanding line to temporarily shut down.[2]
Appellant also filed with the trial court a deposition from an industrial safety consultant, James J. McCarthy ("McCarthy"), concerning the effect of having an unguarded "transition point" on the sanding line. After reviewing the machine in question, in addition to the safety materials which were provided with the machine, McCarthy concluded that it was substantially certain that a person's hand would get caught in one of the transition points on the sanding line if it were left unguarded. McCarthy's testimony concerned both conveyor table to sanding machine transition points and conveyor table to conveyor table transition points.
As for the emergency safety strip, McCarthy testified that if the strip had not been removed, it could have possibly prevented appellant's injury by shutting the table down before she could get her hand all the way inside. At worst, McCarthy testified that the emergency safety strip would have lessened the severity of appellant's injury. Appellee offered no comparable testimony to refute that of McCarthy.
With respect to her job duties, appellant contended that as an inspector, she was expected to reach onto the moving conveyor belt and flip passing doors so that the underside could be viewed. When a particular door needed repairs, appellant was required to remove the door manually from the table. Accordingly, appellant contends that because she was assigned to an area with an unguarded transition point, and because appellee had intentionally removed the emergency shutoff strip closest to that point, she was required by appellee to perform a dangerous task.
As shown, appellant responded to each of appellee's arguments and submitted evidentiary materials to the contrary. Nevertheless, it is apparent from the trial court's judgment entry that it chose to believe appellee's version of the facts when rendering its decision.
It is not the province of the trial court in a summary judgment exercise to either weigh the evidence before it, or to accept one party's interpretation of that evidence in toto.Heitanen v. Rentschler (Dec. 17, 1999), Geauga App. No. 98-G-2187, unreported, at 14-15, 1999 Ohio App. LEXIS 6112; TescoReal Estate, Inc. v. K-Y Residential, Commercial Indus. Dev.Corp. (Feb. 17, 1995), Trumbull App. No. 94-T-5093, unreported, at 5, 1995 Ohio App. LEXIS 584.
Civ.R. 56, instead, requires that the evidence presented must be construed most favorably for the nonmoving party, unless the evidence is so one-sided, or in the alternative, unreliable, that one party must prevail as a matter of law. Turner at 340. Here, a review of the record shows that this standard of review was not properly applied. There is considerable evidence that, if believed, could show that appellee committed an employer intentional tort. Specifically, several genuine issues of material fact exist as to whether appellee intentionally removed the guard in question, whether appellee was substantially certain that an employee would be injured by the unguarded "transition point," and whether appellee required appellant to perform a dangerous task. As a result, appellant's first assignment of error is well-taken to the limited extent indicated.
In appellant's second assignment of error, she argues that R.C. 2745.01 is unconstitutional because it requires an employee to prove an intentional employer tort by clear and convincing evidence. R.C. 2745.01's constitutionality has already been decided. In Johnson v. BP Chemicals, Inc. (1999), 85 Ohio St.3d 298, syllabus, the Supreme Court of Ohio struck down this particular statute as unconstitutional in its entirety. See, also, Solakakis Natl. Machine Co. (Aug. 6, 1999), Trumbull App. No. 98-T-0090, unreported at 5, 1999 WL 652452; Bare v. WarrenConsol. Industries (June 18, 1999), Trumbull App. No. 98-T-0133, unreported, at 1-3, 1999 WL 417968. As a result, appellant's second assignment of error has merit
Based on the foregoing analysis, the judgment of the trial court is reversed, and the matter is remanded for further proceedings consistent with this opinion.
 __________________________ JUDGE JUDITH A. CHRISTLEY
FORD, P.J., O'NEILL, J., concur.
[1] Although appellant's original complaint listed Timesavers as two words, a review of the record shows that it is actually spelled as one word. Hence, we use the correct spelling throughout this opinion.
[2] We would like to note that there were numerous depositions taken in this case. For whatever reason, however, some of those depositions were not filed with the trial court and, thus, are not a part of the record before this court. Nevertheless, portions of several of the unfiled depositions were appended to the parties summary judgment motions, both for and against, without objection. As a result, these appended portions could be considered at the discretion of the trial court.Chambers v. St. Mary's School (June 27, 1997), Geauga App. No. 96-G-2013, unreported, at 2, 1997 WL 401555; Trimble-Weber v.Weber (Apr. 25, 1997), Geauga App. No. 96-G-1997, unreported, at 2, 1997 WL 269305.