{¶ 18} As I believe the conflict between Mr. Lawson's affidavit and deposition testimony creates a genuine issue of material fact precluding summary judgment, pursuant to Civ.R. 56(C), I respectfully dissent.
 {¶ 19} Civ. R. 56(C) provides in relevant part:
"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 20} To demonstrate the absence of a genuine issue of material fact with regard to the selection of lower UM/UIM coverage limits, Appellee submitted Mr. Lawson's affidavit wherein he testified in pertinent part:
"I was informed of the increase in cost of insurance andpremiums that would be included in the policy if I were to purchase uninsured/underinsured motorist coverage with limits in an amount equal to the limits of the auto liability coverage provided under the St. Paul Policy and of the reduction in costof insurance and premiums that would be included in the policy if I were to purchase uninsured/underinsured motorist coverage if I selected reduced uninsured/underinsured motorist limits." (Emphasis added.)
Three months after executing the affidavit, Mr. Lawson was deposed by Appellant. In contrast to his affidavit testimony, in his deposition, Mr. Lawson admitted that he did not receive an actual estimate from Appellee regarding the amount of his premium:
Q: "Did you ever receive any type of quote in 2000 as to what the actual increase in cost would be for you to carry 2 million dollars in UIM limits in Ohio as opposed to $50,000.00 UIM limits in Ohio?
A: "Not to my recollection but even at $50 or $100 a vehicle, with 3500 vehicles systemwide, the dollar impact would be substantial.
Q: "Okay. Just for the record, you never actually got a quote or any type of documentation or figure from either St. Paul or from your broker as to what the additional cost would be for you to carry UIM limits in Ohio of 2 million dollars versus UIM limits in Ohio of $50,000, correct, you never got any such figures?
A. "Correct.
Q. "So in other words, if I were to ask you how much money do you understand that you saved by signing the Ohio Selection Rejection Form on December 28, 2000, you would have no way to quantify how much money, you knew that you saved some money, but you have no idea how much money you saved by electing to go with the $50,000 UIM limits as opposed to the 2 million dollar UIM limits; is that correct?
"* * *
A: "Based on my experience, I would have a pretty good idea of the magnitude of the savings.
"* * *
Q: "And in other words, if I were to ask you — well, I'm asking — at no time did anybody at St. Paul or your broker ever say, `Mr. Lawson, if you sign this rejection form that's attached to your affidavit wherein you elected to take $50,000 instead of 2 million dollars of UIM, you will save X amount of money,' nothing like that was ever communicated to you; was it?
A: "It was not."
 {¶ 21} In Turner v. Turner (1993), 67 Ohio St.3d 337, the Supreme Court held that
"[w]hen a litigant's affidavit in support of his or her motion for summary judgment is inconsistent with his or her earlier deposition testimony, summary judgment in that party's favor is improper because there exists a question of credibility which can be resolved only by the trier of fact." Id. at paragraph one of the syllabus.
The Turner Court found that summary judgment was improperly granted in favor of the moving party because there were inconsistencies between the moving party's affidavit and deposition testimony. Id. at 341. Similarly, in Concrete CoringCo. v. Gantzer, 1st Dist. No. C-020119, 2002-Ohio-6655, the First District Court of Appeals held that the discrepancies between the moving party's affidavit and deposition testimony raised credibility concerns that could not be resolved on a motion for summary judgment.
 {¶ 22} The majority, however, finds no contradiction between Mr. Lawson's affidavit and his deposition testimony. Rather, the majority finds that this extrinsic evidence demonstrates that Mr. Lawson has a "working knowledge of the lowered insurance and its relationship to the overall cost of the insurance premium" which satisfies the burden set forth in Hollon v. Clary,104 Ohio St.3d 526, 2004-Ohio-6772, at syllabus. I disagree.
 {¶ 23} "In deciding whether an evidentiary conflict exists so as to preclude summary judgment, a trial court must adhere to Civ.R. 56(C) and view the record in the light most favorable to the party opposing the motion." Turner, 67 Ohio St.3d at 341, citing Kunkler v. Goodyear Tire Rubber Co. (1988),36 Ohio St.3d 135, 138. Moreover, the trial court must construe the inferences drawn from the underlying facts contained in the affidavit and deposition in the light most favorable to the nonmoving party. Turner, 67 Ohio St.3d at 341. If the trial court determines that a discrepancy exists regarding a material fact, it must submit the evidence to the trier of fact for resolution. Id.
 {¶ 24} Viewing the testimony in the light most favorable to Appellant, the nonmoving party, I find that a discrepancy exists regarding this testimony. Therefore, I cannot agree with the majority's finding that Mr. Lawson's deposition testimony that hedid not receive an estimate of his premiums from Appellee supplements his affidavit wherein he testified that he received this information. Instead, I find this extrinsic evidence in conflict. Accordingly, I would reverse the trial court's grant of summary judgment in favor of Appellee.